UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JENNIFER M KEWENIG,[1]

        Plaintiff,

v.                                                                    Case No. 21-cv-1246-bhl

KILOLO KIJAKAZI, Acting Commissioner for
Social Security Administration,

        Defendant.

## ORDER

       Plaintiff Jennifer M. Kewenig seeks reversal and remand of an administrative law judge decision denying her applications for Social Security Disability (SSD) and Supplemental Security Income (SSI) benefits under the Social Security Act. For the reasons set forth below, the decision is affirmed.

### PROCEDURAL BACKGROUND

       Kewenig applied for SSD and SSI on June 24, 2019 and July 1, 2019, respectively. (ECF No. 12 at 2.) Her claims were denied initially and on reconsideration, so she sought a hearing before an administrative law judge (ALJ). (ECF No. 22 at 3.) That hearing occurred on January 20, 2021. (ECF No. 12 at 2.) About three weeks later, the ALJ issued his decision, finding Kewenig "not disabled." (*Id.*) The Appeals Council denied her request for review, and this action followed. (*Id.*)

### FACTUAL BACKGROUND

       At the time of her hearing before the ALJ, Jennifer Kewenig was 41 years old with an employment history that included various odd jobs such as material handler, shipping checker, injection molding machine operator, and gas station clerk. (*Id.*) She could no longer perform any of that work thanks to a combination of neck, thoracic spine, and right shoulder pain as well as

---

[1] In the operative complaint, Plaintiff's attorneys accidentally transformed their client "Jennifer M. Kewenig" into a gerund: "Jennifer M. *Kewening*." (ECF No. 1.) The Court has corrected the caption to reflect Plaintiff's actual name.

anxiety and post-traumatic stress disorder (PTSD). (*Id.* at 19.) She testified that she lived with her parents and minor daughter and assisted with household chores as able. (*Id.* at 19-20.) But she also stated that, on her bad days, her pain rendered her virtually immobile. (*Id.* at 20.)

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id.*

In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

Kewenig takes issue with the ALJ's appraisal of medical opinions and prior administrative medical findings of record and her own credibility. While she may disagree with the outcome—losing parties usually do—she has not identified any analytical defect worthy of remand. The Commissioner's decision will, therefore, be affirmed.

**I.   The ALJ Properly Evaluated the Medical Opinions and Prior Administrative Medical Findings of Record.**

Under recently revised regulations, for claims filed on or after March 27, 2017, an ALJ must evaluate the *persuasiveness* of medical opinions and prior administrative medical findings and, at the very least, articulate how the two most important factors—supportability and consistency—informed his analysis. *See* 20 C.F.R. §404.1520c. Failure to do so constitutes reversible error. *See Lenz v. Kijakazi*, No. 20-CV-1810-SCD, 2022 WL 154548, at *5-8 (E.D. Wis. Jan. 18, 2022).

Kewenig complains that the ALJ in her case dubbed the opinions of three treating physicians (Drs. Cyril Philip and Robina Chowdhery and Licensed Professional Counselor Donna Jorgensen) "unpersuasive" without due consideration of the supportability and consistency factors.

For example, she contends that the ALJ did not discuss the clinical abnormalities that Dr. Philip relied on to form his opinions. (ECF No. 12 at 22-23.) This is incorrect; the ALJ did cite those abnormalities. (ECF No. 8-3 at 36, 46-48.) He nonetheless found most of Dr. Philip's opinions unpersuasive because they were: (1) rendered after only two appointments; (2) inconsistent with Kewenig's self-reports, the reports of other medical professionals, and even Dr. Philip's own later findings; and (3) unsupported by the bulk of the objective evidence of record. (*Id.*) The same basic analysis also applies to Dr. Chowdhery and Counselor Jorgensen. (*Id.* at 37-38, 42-46.) Kewenig's gripe, then, is with the outcome, not the process. She has not identified any forgotten input; she just dislikes the result. But that is not a basis for this Court to intervene. When reviewing the Commissioner's final decision, Courts do not reweigh evidence. *See L.D.R. ex rel. Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019).

Kewenig also argues that the ALJ improperly labeled her treatment "conservative," and used this misnomer to frustrate her case. (ECF No. 12 at 24, 29.) She did undergo epidural steroid injections, which to the medically uninitiated certainly sounds serious. (*Id.* at 24.) But the Seventh Circuit disagrees. *See Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (noting that epidural steroid injections have been characterized as conservative); *Burnham v. Colvin*, 525 F. App'x 461, 465 (7th Cir. 2013) (calling epidural injections "conservative treatment"). Kewenig's mental health treatment, though, is less obviously modest. She takes psychotropic medications and attends therapy twice a week. (ECF No. 12 at 14-17.) Within the Seventh Circuit, some courts view the administration of "'medications that can alter behavior'" as "'anything but conservative treatment.'" *See Chubb v. Colvin*, No. 3:12-CV-168 JD, 2013 WL 4540726, at *11 (N.D. Ind. Aug. 27, 2013) (quoting *Baker v. Astrue*, No. ED CV 09-01078 RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010)). Others appear to require something more, like in-patient treatment, to venture beyond the realm of the "conservative." *See Shaun R. v. Saul*, No. 18 C 4036, 2019 WL 6834664, at *8 (N.D. Ill. Dec. 16, 2019); *Diana S. v. Kijakazi*, No. 19-cv-6344, 2022 WL 2316201, at *11 (N.D. Ill. June 28, 2022) (collecting cases). Ultimately, the split is irrelevant. The ALJ discredited Counselor Jorgensen's opinion for many reasons, and this was only one. (ECF No. 8-3 at 43.) Any error was therefore harmless. *See Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009).

Kewenig next claims that the ALJ mischaracterized her daily activities as inconsistent with Dr. Philip's and Dr. Chowdhery's opinions. (ECF No. 12 at 23-24.) The Seventh Circuit has repeatedly admonished ALJs not to confuse a claimant's ability to wash a dish with her ability to

work as a dishwasher. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). "[W]orking sporadically or performing household chores are not inconsistent with being unable to engage in substantial gainful activity." *Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015). But the ALJ never suggested they were. Rather, he "cited [Kewenig's] activities . . . as evidence that she was not as limited as" Drs. Philip and Chowdhery opined. *Brandt v. Saul*, No. 20-C-1471, 2022 WL 79850, at *16 (E.D. Wis. Jan. 7, 2022). Obviously, a claimant's ability to, say, climb a mountain, calls into question her doctor's opinion that she can stand for no longer than 10 minutes at a time. An ALJ can properly highlight such a discrepancy, not to prove that the claimant can work, but to articulate why the doctor's opinion is unpersuasive. That is what happened here. Kewenig testified that she moved heavy objects in her basement and frequently cleaned up after her "lazy" parents. (ECF No. 8-3 at 30.) This undercut Dr. Chowdhery's opinion that Kewenig could not tend to her own personal hygiene without assistance. (*Id.* at 45.) Thus, Kewenig's daily activities were pertinent to the ALJ's analysis and not inappropriately wielded to deny her claims.

Kewenig also argues that the ALJ improperly rejected her applications because her mental health improved with treatment. (ECF No. 12 at 28-29.) Similar to daily activities, improvement with treatment does not mean a claimant can enter the workforce. *See Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011). Again, though, the ALJ never said that it did. He instead emphasized Kewenig's improvement to explain the unpersuasive nature of Counselor Jorgensen's opinion, which relied on observations made before Kewenig's treatment began. (ECF No. 8-3 at 43-44.) Improvement with treatment was, therefore, a legitimate consideration, not grounds for reversal.

Finally, Kewenig claims that, in rejecting her applications, the ALJ erroneously relied solely on the prior administrative medical findings of non-examining state agency consultants (Drs. Jeffrey Nesta, Marie Turner, Catherine Bard, and Stacey Fiore), which do not constitute substantial evidence. (ECF No. 12 at 25-26, 29-30.) Under the old regulations, an ALJ could "'reject an examining physician's opinion only for reasons supported by substantial evidence in the record,'" and "'a contradictory opinion of a non-examining physician [did] not, by itself, suffice.'" *Vanprooyen v. Berryhill*, 864 F.3d 567, 573 (7th Cir. 2017) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)). The revised regulations dispose of this requirement and instead only require an ALJ to articulate how persuasive he found an opinion and why. By either standard, the ALJ in this case fulfilled his duty. As already explained, his persuasiveness determinations did not rest solely on the contradictory opinions of non-treating consultants; he completed a

detailed analysis of the objective medical evidence, other medical opinions of record, treatment history, history of improvement, and claimant's daily activities. (ECF No. 8-3 at 39-48.) He then found that the state medical consultants' opinions generally comported with this history, while the opinions of several of Kewenig's treating physicians did not. (*Id.*) And he always addressed supportability and consistency. That is more than enough to meet the lenient "substantial evidence" standard. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## II.   The ALJ Properly Evaluated Kewenig's Subjective Testimony.

Social Security Ruling 16-3p (SSR 16-3p) instructs an ALJ evaluating a claimant's subjective testimony to ask "whether the evidence establishes medically determinable impairment(s) that could reasonably be expected to produce" the symptoms alleged. If so, the ALJ must then determine whether "the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.*

In this case, the ALJ found that Kewenig's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," but that the record did not support the purported "intensity, persistence, and limiting effects of [those] symptoms." (ECF No. 8-3 at 34.) Kewenig calls this "patently wrong." *See Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (holding that an ALJ's credibility determination may be overturned only if it is "patently wrong"). And she may well believe it—individuals often perceive themselves to be in the best position to assess their own capabilities and limitations. But SSR 16-3p recognizes that even an honest subjective assessment can understate a claimant's abilities. Accordingly, it directs ALJs to consider a number of objective factors to corroborate the claimant's self-assessed limitations. *See* SSR 16-3p(2)(d)(1)-(7). That is exactly what Kewenig's ALJ did. He underscored the disconnect between Kewenig's self-assessment and the objective medical evidence, intensity of her treatment, and her daily activities. (ECF No. 8-3 at 34-38.) This provided "rational support" for his conclusion. *See Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) (noting that the substantial evidence standard only requires an ALJ's decision rest on rational support).

And the ALJ did not, as Kewenig contends, reject her allegations solely because the objective medical evidence did not substantiate them. *See* 20 C.F.R. §404.1529(c)(2). Objective medical evidence was but one brick in the wall, as it is *supposed* to be. *See* SSR 16-3p (noting that the ALJ should "examine the entire case record, including the objective medical evidence").

The ALJ considered the objective medical evidence alongside other factors and reached a rationally supported conclusion that this Court is not empowered to upset.

Lastly, it was not reversible error for the ALJ to mention that Kewenig continued smoking "despite being counseled that smoking cessation would likely improve her pain." (ECF No. 8-3 at 36.) The ALJ reasoned that a person in as much agony as Kewenig alleged would surely give up cigarettes if it meant some measure of relief. The Seventh Circuit, though, has not looked favorably upon this rationale. In *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000), the Court wrote: "One does not need to look far to see persons with emphysema or lung cancer—directly caused by smoking—who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts their ability to stop." The instant case is potentially distinguishable in that, unlike in *Shramek*, there is medical evidence that links smoking to Kewenig's pain. *See id.* at 813. But the thrust of the *Shramek* Court's holding makes the failure to quit smoking a dubious basis on which to rest a credibility determination. That said, the ALJ addressed plenty of other factors that do substantially support his credibility assessment. Nothing more is required. *See Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are.").

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Acting Commissioner's decision is **affirmed**, and the case is **dismissed**.

Dated at Milwaukee, Wisconsin on September 29, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge